# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01274-SCT

*COMMONWEALTH BRANDS, INC., THE CORR-WILLIAMS COMPANY, AND VICKSBURG SPECIALTY COMPANY*

*v.*

*J. ED MORGAN, COMMISSIONER OF REVENUE OF THE DEPARTMENT OF REVENUE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2011 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | LUTHER T. MUNFORD |
| | FRED L. BANKS, JR. |
| | ROBERT GREGG MAYER |
| | ROBERT J. BROOKHISER |
| | ELIZABETH B. MCCALLUM |
| | STEPHEN J. CARMODY |
| | LOUIS G. FULLER |
| ATTORNEYS FOR APPELLEE: | GARY WOOD STRINGER |
| | BRIDGETT THOMAS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: REVERSED AND REMANDED - 04/04/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON AND RANDOLPH, P.JJ., AND PIERCE, J.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Appellants raise a constitutional challenge to a fee legislated on cigarettes distributed through Mississippi for sale outside the state, claiming separate violations of the Commerce

and Due-Process Clauses. In 2009, the Mississippi Legislature passed a law imposing a fee[1] on the sale, purchase, and distribution in Mississippi of cigarettes manufactured by companies that did not enter into settlement agreements with the State of Mississippi as a result of a 1997 lawsuit (the "nonsettling manufacturer" or "NSM" law), "including cigarettes sold, purchased or otherwise distributed in this state for *sale outside of this state*."[2] Miss. Code Ann. § 27-70-5 (Rev. 2010) (amended in 2010) (emphasis added).

¶2. In 2009, one nonsettling manufacturer – Commonwealth Brands, Inc. ("Commonwealth") – and one distributor – the Corr-Williams Company ("Corr-Williams") (collectively "Appellants") – sued Ed Morgan, in his capacity as Commissioner of Revenue of the Department of Revenue ("Commissioner") in Hinds County Chancery Court. Appellants claimed that the imposition of the NSM fee on products sold, purchased, or distributed in Mississippi, but ultimately *sold to consumers or users outside Mississippi*, violated the Commerce and Due-Process Clauses of the United States Constitution. They sought a declaration that the imposition of the NSM fee on cigarettes *for sale outside Mississippi* is unconstitutional; an injunction to prevent the State from collecting the fee from

[1]The parties and chancellor have used the terms "tax" and "fee" interchangeably throughout this litigation. For purposes of this opinion only, this Court does likewise. The issue of whether they are legally the same for purposes of this case is not before the Court. We are expressing no opinion in this regard. This opinion should not be cited for the proposition that this Court has declared that they are the same.

[2]The Legislature has since amended the NSM law to remove the provision that applied the fee to cigarettes sold outside Mississippi. *See infra*, ¶ 11.

2

them for cigarettes distributed in Mississippi for *sale outside the state*; and damages, expenses, and attorney fees under 42 U.S. Code Sections 1983 and 1988.

¶3. In October 2009, the chancery court entered a temporary restraining order enjoining the Commissioner from assessing and collecting the challenged fee. In November 2009, the chancery court held an evidentiary hearing, after which it granted Appellants a preliminary injunction and ordered them to post surety bonds. The chancery court found as follows:

> (A) There is a substantial likelihood that Plaintiffs will prevail on their constitutional challenges to the assessment and payment of fees on the sale of NSM cigarettes sold, purchased or otherwise distributed in Mississippi for sale outside of Mississippi . . . ;
>
> (B) Corr-Williams and Commonwealth Brands will suffer immediate and irreparable harm with such threat being imminent if the MSTC assesses and demands payment of fees on the sale of [such] cigarettes . . . in that Corr-Williams may lose its ability to distribute NSM cigarettes and other grocery products in the State of Louisiana, with an accompanying loss in competitive advantage, business reputation, and goodwill and that Commonwealth Brands also faces the threat of immediate loss of competitive advantage, market share, business reputation, and good will with respect to cigarettes sold, purchased or otherwise distributed in this state for sale outside of this state.
>
> (C) The threat of irreparable injury to Corr-Williams and Commonwealth Brands far outweighs any potential harm to the State . . . , even considering the present economic conditions of the State of Mississippi and the potential implications of . . . reduced revenues that this [preliminary injunction] might have on the State budget, and moreover, . . . the threat of injury to the Defendant is minimal in that if the MSTC ultimately prevails, it will be able to assess and collect the tax that accrues during the pendency of this litigation; and
>
> (D) The public interest is served by the entry of the [preliminary injunction] because if the MSTC assesses and demands payment of fees on the sale of NSM cigarettes sold, purchased or otherwise distributed in Mississippi for sale outside of Mississippi . . . from Commonwealth Brands or by Corr-Williams, there may be a resulting loss of jobs and tax revenue when Corr-Williams and distributors in situations similar to Corr-Williams move all or some of its operations to the State of Louisiana and other states to avoid the effect thereof, or when Commonwealth and manufacturers in situations similar to

3

Commonwealth shift some or all of their business to distributors in other states to avoid the effect thereof.

In January 2010, the chancery court allowed Vicksburg Specialty to intervene, entered a preliminary injunction enjoining the Commissioner from imposing the NSM fee on NSM cigarettes distributed by Vicksburg Specialty, and required Vicksburg Specialty to post a surety bond.

¶4.     In May 2010, the chancery court issued a "Stipulated Order Regarding Schedule and Procedures," in which the parties agreed, in lieu of trial, to submit proposed stipulations of facts and proposed findings of fact and conclusions of law to the chancellor. In August 2010, the chancery court issued an order denying Appellants a permanent injunction and declaratory relief, and finding all other issues moot. The chancery court found that the NSM fee did not violate the Commerce Clause or the Due-Process Clause, based on its findings that: (1) there was "a substantial nexus between the tax and the transaction within Mississippi"; (2) the fee was fairly apportioned, because, even if other states had an identical statute, those states would not tax Commonwealth for the "same purpose" – distribution through Mississippi; (3) the fee did not discriminate against interstate commerce, because, (like its reasoning for finding fair apportionment) even if other states had an identical statute, they would not impose a fee on the same transaction as the Mississippi law – distribution through Mississippi; and (4) the fee was fairly related to distribution activities and services in Mississippi.

¶5. Subsequently, the Commissioner filed a "Motion for Entry of Final Judgment," seeking fees, interest, and penalties from Appellants for the two years that it was enjoined from collecting fees under the preliminary injunction, and Appellants filed a motion for reconsideration. The chancery court held a hearing on both motions in December 2010. The chancery court reserved ruling on the motions until the end of the 2011 Mississippi Legislative Session, during which the Legislature amended the statute to provide that the NSM fee *does not apply* to cigarettes sold, purchased, or distributed in Mississippi *for sale outside the state*. Miss. Code Ann. § 27-70-5 (Supp. 2012).

¶6. In May 2011, the chancery court found that the legislative amendment did not apply retroactively, denied Appellants' motion for reconsideration, and granted the Commissioner's motion for final judgment. However, the chancery court did not enter final judgment at that time. Rather, three months later, on August 30, 2011 (upon the parties' request for a status conference), the chancellor entered final judgment, which incorporated the August 2010 order (denying Appellants' request for a permanent injunction and declaratory relief) and the May 2011 order (denying motion for rehearing and granting motion for final judgment). Commonwealth, Corr-Williams, and Vicksburg Specialty appeal the final judgment, and the Commissioner cross-appeals.

**FACTS**

¶7. Mississippi has long imposed and collected taxes on the sale of tobacco within the state under the Tobacco Tax Act. The Tobacco Tax Act provides that:

5

> The . . . tax is levied upon the sale, use, gift, possession or consumption of tobacco *within the State of Mississippi*, and the impact of the tax levied by this chapter is hereby declared to be on the vendee, user, consumer or possessor of tobacco in this state; and when said tax is paid by any other person, such payment shall be considered as an advance payment and shall thereafter be added to the price of the tobacco and recovered from the ultimate consumer or user.

Miss. Code Ann. § 27-69-13 (Rev. 2010) (emphasis added). The Tobacco Tax Act also specifies that "[t]he provisions of this chapter shall not apply to dealers in tobacco made the subject of interstate sales, except as provided in Chapter 70, Title 27, Mississippi Code of 1972." Miss. Code Ann. § 27-69-19 (Rev. 2010).

¶8. In 1997, the State of Mississippi entered into a settlement agreement with the four largest U.S. cigarette manufacturers. The settling manufacturers agreed to pay the State certain sums, to be adjusted by domestic tobacco product volume sales.

¶9. In 1998, forty-six other states and territories entered into a separate settlement agreement with the same four cigarette manufacturers that were parties to the 1997 Mississippi agreement ("Master Settlement Agreement" or "MSA").[3] Under the Master Settlement Agreement, as under the 1997 agreement, the manufacturers agreed to pay certain sums to the settling states and territories. *Id.* The MSA based these sums on national tobacco sales, net of, *inter alia*, amounts paid to Mississippi under the 1997 agreement. *Id.*

---

[3] *Master Settlement Agreement*, available at http://web.archive.org/web/20080625084126/http://www.naag.org/backpages/naag/tobacco/msa/msa-pdf/1109185724_1032468605_cigmsa.pdf (last visited Mar. 28, 2013).

Manufacturers other than the four originally sued were permitted to join the MSA voluntarily. *Id.* Commonwealth elected to do so.[4]

¶10. In 2009, the Mississippi Legislature enacted the NSM law, imposing on manufacturers that were not parties to the 1997 agreement a fee for sales, purchases, and distribution of tobacco products in Mississippi. Miss. Code Ann. §§ 27-70-1 to 27-70-23 (Rev. 2010). The stated purpose of the NSM law was to:

> (a) Prevent nonsettling manufacturers from undermining this state's policy of discouraging underage smoking by offering cigarettes at prices that are substantially below the prices of cigarettes of other manufacturers;
>
> (b) Protect the tobacco settlement agreement, and funding, which has been reduced because of the growth of sales of nonsettling-manufacturer cigarettes, for programs that are funded wholly or partly by payments to this state under the tobacco settlement agreement and recoup for this state settlement payment revenue lost because of sales of nonsettling-manufacturer cigarettes;
>
> (c) Provide funding to enforce and administer this chapter and any legislation relating to nonsettling manufacturers; and
>
> (d) Provide funding for any other purpose the Legislature determines.

Miss. Code Ann. § 27-70-1 (Rev. 2010). The statute imposed a fee as follows:

> (1) A fee is imposed on the sale, use, consumption or distribution in this state of:
>> (a) Nonsettling-manufacturer cigarettes if a stamp is required to be affixed to a package of those cigarettes under the Tobacco Tax Law; and
>> (b) Nonsettling-manufacturer cigarettes that are sold, purchased or distributed in this state but that are not required to have a stamp affixed

---

[4]The amounts Commonwealth must pay under the MSA are not net of any payments to Mississippi, as Commonwealth was not a party to the 1997 agreement. *Master Settlement Agreement.*

to a package of those cigarettes under the Tobacco Tax Law, *including cigarettes sold, purchased or otherwise distributed in this state for sale outside of this state*.

(2) The fee imposed by this chapter does not apply to cigarettes that are included in computing payments due to be made by a settling manufacturer under the tobacco settlement agreement.

(3) The fee imposed by this chapter is in addition to any other privilege, license, fee or tax required or imposed by state law.

(4) Except as otherwise provided by this chapter, the fee imposed by this chapter is imposed, collected, paid, administered, and enforced in the same manner, taking into account that the fee is imposed on nonsettling manufacturers, as the taxes imposed by the Tobacco Tax Law, as appropriate.

Miss. Code Ann. § 27-70-5 (Rev. 2010) (emphasis added).

¶11.    In 2011, during the pendency of this litigation, the Mississippi Legislature amended the NSM law. Miss. Code Ann. § 27-70-5 (Supp. 2012). Those amendments included the removal of the language explicitly imposing the NSM fee on cigarettes for sale outside of the state (Section 27-70-5(1)(b) of the 2009 law), and the addition of the following language: "[t]he tax imposed by this chapter **does not apply** to cigarettes that are sold, purchased or otherwise distributed in this state **for sale outside of this state**." *Id.*; Miss. Code Ann. § 27-70-5(2) (Supp. 2012) (emphasis added).

**ISSUES**

¶12.    All Appellants raise the following three issues on appeal:

1. Whether a law imposing a fee on certain cigarette manufacturers for the in-state sale, purchase, or distribution of cigarettes for retail sale outside of the state violated the Commerce Clause.

8

2. Whether the fee on the in-state sale, purchase, or distribution of cigarettes to be sold out of state was an impermissible exercise of extra-territorial jurisdiction that violated the Due-Process Clause.

3. Whether Commonwealth, Corr-Williams, and Vicksburg Specialty are entitled to relief under 42 U.S.C. § 1983 and attorney fees under 42 U.S.C. § 1988, because state law provides them no plain, speedy, and efficient remedy.

¶13. Appellants Corr-Williams and Vicksburg Specialty raise a fourth issue:

4. Whether the final judgment of the chancery court is invalid to the extent that it allows the State to seek unpaid NSM fees, interest, and penalties from Corr-Williams and Vicksburg Specialty.

¶14. On cross-appeal, the Commissioner raises the following issue:

5. Whether the chancellor erred by failing to include in the final judgment a monetary judgment in favor of the State against Commonwealth, Corr-Williams, and Vicksburg Specialty in the amount of the fees and interest the State was enjoined from collecting due to the temporary restraining order and preliminary injunctions, plus ten percent under Mississippi Code Section 11-13-15.

¶15. Finding the first and third issues dispositive, we decline to address issue two. Our disposition moots issues four and five.

## DISCUSSION

### I. Standard of Review

¶16. This Court applies a *de novo* standard of review when addressing a statute's constitutionality. ***Johnson v. Sysco Food Servs.***, 86 So. 3d 242, 243 (Miss. 2012) (citations omitted).

### II. Commerce Clause

9

¶17. To comply with the Commerce Clause, a tax must: (1) be imposed on an activity with a substantial nexus with the taxing state; (2) be fairly apportioned, based on the activity within the taxing state; (3) not discriminate against interstate commerce; and (4) be fairly related to services provided by the taxing state. ***Complete Auto Transit, Inc. v. Brady***, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977). This Court and the United States Supreme Court have recognized that, to satisfy these basic Commerce-Clause requirements, a tax also must be "internally consistent."[5] *See, e.g.*, ***Thomas Truck Lease, Inc. v. Lee County***, 768 So. 2d 870, 876 (Miss. 1999); ***Okla. Tax Comm'n v. Jefferson Lines, Inc.***, 514 U.S. 175, 185, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995); ***Tenn. Gas Pipeline Co. v. Marx***, 594 So. 2d 615, 618 (Miss. 1992). The U.S. Supreme Court has provided that "internal consistency is preserved when the imposition of a tax identical to the one in question by every other State *would add no burden to interstate commerce that intrastate commerce would not also bear*." ***Jefferson Lines***, 514 U.S. at 185 (emphasis added). Phrased slightly differently, we have explained that, "[t]o be internally consistent, a tax must be structured so that if every State were to impose an identical tax, *no multiple taxation would result*." ***Thomas Truck Lease***, 768 So. 2d at 876 (emphasis added). Thus, internal consistency broadly asks whether, if all states enacted an identical statute, interstate commerce would bear a burden that purely

_____

[5]The U.S. Supreme Court has provided that a tax must be both *internally* and *externally* consistent. ***Okla. Tax Comm'n v. Jefferson Lines, Inc.***, 514 U.S. 175, 185, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995). However, a tax that does not satisfy the internal consistency test is unconstitutional, and there is no need to assess whether it is externally consistent. ***Id***. (noting that the U.S. Supreme Court asks "whether the tax is 'internally consistent' *and, if so*, whether it is 'externally consistent' as well.") (emphasis added).

intrastate commerce would not, such as multiple taxation. *Id.*; *Jefferson Lines*, 514 U.S. at 185.

¶18.   The U.S. Supreme Court has further explained that:

> [the internal-consistency] test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax.

*Jefferson Lines*, 514 U.S. at 185.

¶19.   The chancellor analyzed compliance with the Commerce-Clause requirements set forth in *Complete Auto Transit*, 430 U.S. 274, and concluded that the NSM law did not violate the Commerce Clause. However, the chancellor erred, as a matter of law, by failing to apply the internal-consistency test mandated by *Jefferson Lines*, 514 U.S. at 185, and *Thomas Truck Lease*, 768 So. 2d at 876.

¶20.   We find that the NSM law, as enacted by the Legislature and acted upon by the Commissioner, failed to satisfy the internal-consistency test as a matter of law. For the NSM fee to be internally consistent, interstate commerce must not bear a burden that intrastate commerce does not (such as multiple taxation) if other states were to adopt statutes identical to the NSM law, including the following provision:

> A fee is imposed on the sale, use, consumption or distribution in this state of . . . [n]onsettling-manufacturer cigarettes that are sold, purchased or distributed in this state but that are not required to have a stamp affixed to a package of

11

> those cigarettes under the Tobacco Tax Law, including cigarettes sold, purchased or otherwise distributed in this state for sale outside of this state.

Miss. Code Ann. § 27-70-5(1)(b) (Rev. 2010). The distribution of cigarettes in Mississippi for ultimate sale outside the state involves separate transactions: (1) the Mississippi distributor's acquisition of products from Commonwealth and (2) the sale of those products in another state – say, Louisiana. If Louisiana enacted a statute identical to the Mississippi NSM law, then Mississippi would impose a fee on transaction (1) and Louisiana would impose a fee on transaction (2).[6] Thus, if another state adopted a law identical to the NSM law, two fees would be imposed on the *same cigarettes*. Stated simply, this *interstate* application involves *two fees* on the same cigarettes. In contrast, if the cigarettes acquired by the Mississippi distributor were sold *intrastate*, they would be subject to only *one fee* – under the Mississippi NSM law. Although each state would impose its fee on a *separate transaction*, cigarettes sold in interstate commerce would bear a second fee that those sold in intrastate commerce would not. Thus, if another state enacted a statute identical to the challenged NSM law, interstate commerce would bear a burden that purely intrastate commerce would not also bear: multiple fees on the same cigarettes. We conclude that the provision of the NSM law imposing a fee on NSM cigarettes distributed through Mississippi for sale outside the state was not internally consistent, in violation of the Commerce Clause.

---

[6]The inverse also would be true: if NSM cigarettes were distributed through Louisiana for sale to retail customers in Mississippi, then Louisiana would impose a fee for the distribution under the Louisiana NSM law, and Mississippi would impose a fee for the sale under the Mississippi NSM law.

Accordingly, Appellants were entitled to the requested permanent injunction and declaratory relief.

### III. 42 U.S.C. Section 1983 Claims

¶21.     Appellants claim that they are entitled to attorney fees under 42 U.S.C. Section 1988[7] for their claims under Section 1983 challenging the constitutionality of the NSM law. Section 1983 reads as follows, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983.

¶22.     At issue in the case *sub judice* is whether the federal Tax Injunction Act precludes a Section 1983 claim in state court to challenge the constitutionality of a state tax where an adequate state-law remedy is available. The Tax Injunction Act provides that:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

---

[7]Section 1988 provides that:

[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

42 U.S.C.A. § 1988(b) (2000).

28 U.S.C.A. § 1341 (1940). The language of Section 1341 prevents federal district courts from granting injunctive relief regarding state tax matters where state law provides a plain, speedy, and efficient remedy. In *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 115 S. Ct. 2351, 132 L. Ed. 2d 509 (1995), the United States Supreme Court "granted certiorari to resolve a conflict among the state courts as to whether, in tax cases, *state* courts must provide relief under § 1983 when adequate remedies exist under state law." *Nat'l Private Truck*, 515 U.S. at 585-86 (emphasis added).

¶23.   Our review of the cases reveals a conflict not only among the states, but also within our own jurisprudence. In *State Tax Commission v. Fondren*, 387 So. 2d 712 (Miss. 1980), a taxpayer sought to enjoin the Commission from approving county recapitulation of assessment rolls until the Commission had equalized assessments among counties. *Fondren*, 387 So. 2d 712. The *Fondren* Court found that "a state court entertaining a 1983 action has no more jurisdiction than a federal district court" and that "[i]t is well established that [Section 1341] is an explicit congressional limitation on the jurisdiction of the federal courts in [state tax] cases . . . ." *Id.* at 723. The Court then found that, in the state-tax action before it:

> [Section] 1983 collides full force with a specific congressional limitation on federal jurisdiction. In such circumstances, we are convinced that [Section] 1341 must prevail.

*Id.* The *Fondren* Court cited the holding in *Bland v. McHann*, 463 F. 2d 21 (5th Cir. 1972), that "Mississippi law provides a plain, speedy and efficient remedy for claims that assessments for taxes in a municipality were not equal and uniform[,]" and reasoned that:

14

[o]bviously this action could not have been brought in federal court under section 1983 because there is a plain, speedy and efficient remedy in Mississippi courts. Complainants, by filing their action in state court, invoked the plain, speedy and efficient remedy granted them by the chancery court and affirmed here.

*Id.* The *Fondren* Court presciently concluded that "the section 1983 cause of action must fail in the state court *because it would have failed if it had been filed first in federal court.*" *Id.* (emphasis added).

¶24.    Seven years later, in *Marx v. Truck Renting and Leasing Association Inc.*, 520 So. 2d 1333 (Miss. 1987), this Court applied a contradictory analysis of federal and state courts' jurisdiction over Section 1983 challenges of state taxes. The *Marx* Court first recognized that "[t]he courts of this State have jurisdiction concurrent with that of the federal courts over actions brought under 42 U.S.C. § 1983." *Marx*, 520 So. 2d at 1346 (citations omitted). However, the *Marx* Court posited its jurisdictional holding on the antithesis of concurrent jurisdiction, declaring that:

> it is the **absence of federal jurisdiction** under 28 U.S.C. § 1341 which operates to **open the door to the state courthouse** so that the taxpayer may here assert his § 1983 claim. A federal courthouse door is closed under such circumstances by 28 U.S.C. § 1341.

*Id.* Thus, this Court held in *Marx* that state courts' jurisdiction over actions challenging the constitutionality of state taxes under Section 1983 is available ***because*** *the federal courthouse door is closed.*[8]

_____

[8]What *Marx* does not say is that the key to either courthouse door – federal or state – for a Section 1983 state-tax claim is controlled by the availability, *vel non*, of a plain, speedy, and efficient remedy in the courts of the state – as previously held by this Court in

15

¶25. A year after *Marx*, this Court decided *Burrell v. Mississippi State Tax Commission*, 536 So. 2d 848, 864 (Miss. 1988). The *Burrell* Court interpreted the holdings of *Fondren* and *Marx* as follows:

> [*Fondren*] says that the state courts have no authority to entertain claims under Section 1983 where the suit is one seeking to enjoin unconstitutional state action with regard to the collection of taxes. *Fondren* confuses a federal jurisdictional limitation, 28 U.S.C. § 1341, with the enforceability of a federally created right and remedy in state court. . . . [O]ur recent decision in [*Marx*] may only be read as holding that the Section 1983/1988 discussion in *Fondren* stands overruled.

*Burrell*, 536 So. 2d at 864.

¶26. Subsequently, courts in other states addressing the same issue revealed that Mississippi was one of only two states to hold that a Section 1983 action could be brought in state court despite the availability of a state-law remedy. *Tatten Partners v. New Castle County Bd. of Assessment Review*, 642 A. 2d 1251, 1265 (Del. 1993); *Greenwich Twp. v. Murtagh*, 601 A. 2d 1352, 1356 at n.10 (Pa. 1992). The other state, New Jersey, also had found that Section 1983 actions challenging state taxes – including actions that could not be brought in federal court under the Tax Injunction Act – could be brought in state court. *Bung's Bar & Grille, Inc. v. Florence Twp.*, 502 A. 2d 1198, 1215 (N.J. 1985). However, after the U.S. Supreme Court issued its opinion in *National Private Truck*, discussed *infra*, the New Jersey court rejected its prior approach, holding that "both state and federal courts 'must refrain from granting federal relief under § 1983 when there is an adequate legal

---

*Fondren*, and subsequently made clear by the U.S. Supreme Court in *National Private Truck*. *See infra* at ¶ 27.

16

remedy.'" ***General Motors Corp. v. City of Linden***, 671 A. 2d 560, 564-65 (N.J. 1996) (quoting ***Nat'l Private Truck***, 515 U.S. at 592). We do the same today.

¶27.     In 1995, the U.S. Supreme Court issued a definitive statement on this issue. The ruling is clear and unequivocal (repeatedly declared), and relies on the same principles used by this Court in ***Fondren***. ***Nat'l Private Truck***, 515 U.S. at 590-92; *see* ***Fondren***, 387 So. 2d at 723 (relying on concurrent jurisdiction to find that Section 1983 state-tax action must fail in state court, because it would have failed in federal court due to the availability of a plain, speedy, and efficient remedy in state court). In ***National Private Truck***, the Court held that Section 1341 restrains both federal and state court jurisdiction over Section 1983 challenges of state taxes – thus validating the ***Fondren*** Court's approach and rejecting ***Marx*** and ***Burrell***. ***Nat'l Private Truck***, 515 U.S. at 590-92. The ***National Private Truck*** Court first stated as follows:

> To be sure, the Tax Injunction Act reflects the congressional concern with federal court interference with state taxation, see 28 U.S.C. § 1341, and there is no similar statute divesting state courts of the authority to enter an injunction under federal law when an adequate legal remedy exists. But this silence is irrelevant here, because **we do not understand § 1983 to call for courts (whether federal or state) to enjoin the collection of state taxes <u>when an adequate remedy is available under state law</u>**. Given the strong background presumption against interference with state taxation, the Tax Injunction Act may be best understood as but a partial codification of the federal reluctance to interfere with state taxation. After all, an injunction issued by a state court pursuant to § 1983 is just as disruptive as one entered by a federal court.

*Id.* at 590-91 (emphasis added) (citation omitted). The Court reiterated that:

> We simply do not read § 1983 to provide for injunctive or declaratory relief against a state tax, either in federal or state court, when an adequate legal remedy exists.

*Id.* at 591. Again phrasing slightly differently, the Court held that:

17

> When a litigant seeks declaratory or injunctive relief against a state tax pursuant to § 1983, . . . state courts, like their federal counterparts, must refrain from granting federal relief under § 1983 when there is an adequate legal remedy.

*Id.* at 592. Thus, the U.S. Supreme Court firmly established that the constitutionality of a state tax may not be challenged under Section 1983 in state court if an adequate remedy is available under state law – as stated in *Fondren* and overruled in *Burrell*. *Fondren*, 387 So. 2d at 723; *Marx*, 520 So. 2d at 1346; *Burrell*, 536 So. 2d at 864. To the extent that *Marx* and *Burrell* conflict with the U.S. Supreme Court's holding in *National Private Truck*, they are hereby overruled.

¶28.   Was a plain, speedy, and efficient remedy under Mississippi law available to Appellants? To provide an adequate remedy, a state law must satisfy "minimal *procedural* criteria[;]" it must "provid[e] the [party] with a 'full hearing and judicial determination'[to] raise any and all constitutional objections to the tax." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512-15 101 S. Ct. 1221, 1229-30, 67 L. Ed. 2d 464 (1981) (emphasis in original).

¶29.   We first turn to the record to answer the question. We find that all Appellants had an adequate remedy, which they invoked, seeking a plain, speedy, and efficient remedy: declaratory relief under Mississippi Rule of Civil Procedure 57.[9] In their complaints, all

---

[9]Commonwealth also had a remedy available under Mississippi Code Section 11-13-11, which provides that:

> The chancery court shall have jurisdiction of suits by one or more taxpayers in any county, city, town, or village, to restrain the collection of any taxes levied or attempted to be collected without authority of law.

Appellants sought "a declaration" that the NSM fee "discriminates against interstate commerce, unduly burdens interstate commerce, and denies due process of law." Appellants' "Motion for Expedited Declaratory and Injunctive Relief," filed the same day as Commonwealth's and Corr-Williams's complaint, states that "[p]ursuant to Miss. R. Civ. P. 57 and 65, Plaintiffs . . . request that the Court issue a declaration and a preliminary and/or permanent injunction . . ."and requests, *inter alia*, that the trial court "[e]nter a judgment . . . declaring unconstitutional the Mississippi NSM tax law insofar as it requires the assessment and collection of fees on nonsettling-manufacturer cigarettes sold, purchased or otherwise distributed in the State of Mississippi for sale outside of Mississippi[.]" In their "Brief in Support of Motion for Expedited Declaratory and Injunctive Relief," Appellants "move[d] . . . for . . . a declaration that . . . [the] NSM fee . . . is unconstitutional . . . ." The brief further stated that: "As the Supreme Court also held in *Marx*, in an action under 42 USC § 1983 to vindicate constitutional rights, successful plaintiffs are also presumptively entitled to attorneys' fees pursuant to 42 U.S.C. § 1988. *Marx*, *supra*, 520 So. 2d at 1346." Their reliance on *Marx* must fail for the reasons stated *supra*. There can be no serious debate that Rule 57 provided a plain, speedy, and efficient remedy, upon which Appellants relied. The record clearly establishes that Appellants premised their claim for attorney fees in conjunction with a claim for declaratory relief under Rule 57, and repeatedly referenced Rule

Miss. Code Ann. § 11-13-11 (Rev. 2004). Section 11-13-11 clearly provides persons or entities upon whom a tax is levied or attempted to be collected a full hearing and judicial determination at which they may raise their constitutional challenges.

19

57 in their pleadings. Accordingly, we find that adequate remedies under state law were available to all Appellants. Thus, the courts of this State should refrain from considering Section 1983 claims in tax cases, mooting Section 1988 claims for fees. That being said, no basis exists for a claim by Appellants for attorney fees under Section 1988.

## CONCLUSION

¶30.   For the reasons discussed herein, we reverse the final judgment of the Hinds County Chancery Court. We remand this case to the Hinds County Chancery Court for entry of judgment consistent with this opinion.

¶31.   **ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR**.