# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01177-COA

EMMA R. DOSS, CLARENCE E. SCUTTER, HENRY LEE CLAIBORNE, GLORIA EDWARDS, ROBERT EDWARDS, MARGIE H. JANUARY, MARY WALLS, BEATRICE B. MATHIS, ARTHUR LEE CAMPHOR, EDDIE DUFFIN, HELEN DUFFIN, SADIE APPLETON, J. GILBERT BUCK, DR. MILDRED L. HOLLAND, AND ELMO MCBRIDE JR.

APPELLANTS

v.

CLAIBORNE COUNTY BOARD OF SUPERVISORS: ALLEN BURKS, CHARLIE NORRELLS, EDWIN SMITH, RONALD SHOULDERS, AND DANIEL PORTER; THE MISSISSIPPI STATE TAX COMMISSION; AND JIM HOOD, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2014 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DEBORAH MCDONALD |
| | JEFFERY KENDRICK HARNESS |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WILSON DOUGLAS MINOR |
| | BARBARA BLACKMON |
| | EDWARD BLACKMON |
| | JANESSA EMONTAN BLACKMON |
| | BRADFORD JEROME BLACKMON |
| | JAMES L. POWELL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEES' MOTION TO DISMISS |
| DISPOSITION: | AFFIRMED – 03/28/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**IRVING, P.J., FOR THE COURT:**

¶1.     In 2009, Emma R. Doss and fourteen other Claiborne County property owners[1] sued the Claiborne County Board of Supervisors (the Board), the Mississippi State Tax Commission (MSTC),[2] and the Mississippi Attorney General (AG).  Doss claimed that the Board, MSTC, and AG conspired to enact or comply with racially discriminatory legislation that prevents the county from collecting traditional ad valorem taxes from Grand Gulf Nuclear Station.  Doss sought a declaratory judgment that the statute is unconstitutional, injunctive relief, and damages.  But the Claiborne County Circuit Court dismissed Doss's complaint.  Doss appeals.  We affirm the circuit court's judgment.

## BACKGROUND AND PROCEDURAL HISTORY

¶2.     This appeal stems from the statutory taxation methodology of Grand Gulf – the only nuclear plant in Mississippi.  Authorized in 1974, Grand Gulf cost $3.5 billion to build, and it began operation in 1985.[3]  In 1986, the Mississippi Legislature enacted Mississippi Code Annotated section 27-35-309(3)(b) (Rev. 2010), which "exempted from county, municipal and district ad valorem taxes any [qualifying] in-state nuclear generating plant owned or

---

[1] For simplicity's sake, we refer to the plaintiffs collectively as "Doss."

[2] During the pendency of this case, MSTC was reorganized and renamed the Mississippi Department of Revenue. *See* Miss. Code Ann. § 27-3-1 (Rev. 2013).

[3] *State ex rel. Pittman v. Miss. Pub. Serv. Comm'n*, 506 So. 2d 978, 980-83 (Miss. 1987) (reversed by *Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 377 (1988)).

operated by a public utility rendering electrical service within the state." *Burrell v. Miss.*

*State Tax Comm'n.*, 536 So. 2d 848, 850-51 (Miss. 1988) (overruled in part on other grounds

by *Commonwealth Brands Inc. v. Morgan*, 110 So. 3d 752, 763 (¶27) (Miss. 2013)).

> [The statute] further provided that any such utility, in lieu of the taxes from
> which it was thus exempted, would be required to pay annually to the [MSTC]
> a sum equal to two percent (2%) of the value of the plant as assessed by the
> [MSTC], but in no event less than $16,000,000.00 for any taxable year. In
> addition, [the statute] provided for distribution of those revenues to the situs
> county, the most populous incorporated municipality within the situs county,
> the state's general fund, and the in-state counties and municipalities served by
> the utility. The distribution plan favored the situs county, particularly in the
> early years following passage of the act. Under normal ad valorem taxation
> principles, however, the situs county would receive all of the revenues so
> generated.

*Id*. at 851. Traditional ad valorem taxation would have authorized the situs county to impose

annual taxes equal to fifteen percent of a nuclear plant's assessed value. *See* Miss. Const.

art. 4, § 112 (providing that real property other than residential and government property may

be taxed at "fifteen percent . . . of true value"). Article 4, Section 112 of the Mississippi

Constitution was also amended to include the following language:

> [T]he Legislature, by general law, may deny or limit a county or other taxing
> authority the right to levy county and/or special taxes on nuclear-powered
> electrical generating plants. In addition to or in lieu of any such county and/or
> special taxes on nuclear . . . plants, the Legislature . . . may provide a special
> mode of valuation, assessment[,] and levy upon nuclear . . . plants and provide
> for the distribution of the revenue derived therefrom.

*Burrell*, 536 So. 2d at 852 n.2.

¶3.     In August 1986, the Board and four taxpayers sued MSTC in Hinds County Chancery

Court. *Id*. at 852. The *Burrell* plaintiffs argued that Claiborne County was "entitled to all

3

of the ad valorem tax revenues generated by [Grand Gulf], the same as would be the case for any other assessable and taxable properties within the county." *Id*. They sought a judgment declaring the statute and the constitutional amendment "null and void" under the Mississippi Constitution, an injunction prohibiting their enforcement, and an injunction requiring MSTC to "issue an assessment roll permitting Claiborne County to tax . . . Grand Gulf . . . as it would any other property within the county . . . ." *Id*.

¶4. The Mississippi Supreme Court upheld the statute and the constitutional amendment. *Id*. at 859, 860-62. However, the *Burrell* Court also held that the chancery court erred when it denied the plaintiffs' request to amend their complaint "to invoke 42 U.S.C. § 1983 and assert a claim that [Grand Gulf's taxation methodology] violate[s] the Equal Protection Clause of the Fourteenth Amendment." *Id*. at 862-64. Consequently, the supreme court remanded the case to the chancery court "with instructions that the amendment be allowed . . . ." *Id*. at 864. The *Burrell* plaintiffs later dismissed their complaint with prejudice in exchange for a one-time payment of $2 million to Claiborne County. *See* Miss. Code Ann. § 27-35-309(3)(c) (Rev. 2010).

¶5. The present litigation began more than twenty years later. Its catalyst was the Board's 2008 equalization of the county's tax roll. Doss objected and complained that Grand Gulf was not included on the tax roll, and her property was taxed at a higher rate than Grand Gulf's. The Board met and rejected Doss's objections. Doss appealed to MSTC, which responded that it had no authority to hear her appeal, because per Mississippi Code

4

Annotated section 27-35-119(2) (Rev. 2010), she should have appealed to circuit court. However, MSTC noted that because section 27-35-309(3)(b) "controls the assessment procedure for nuclear generating plants and the distribution of revenues," it was "bound by the plain meaning of th[e] statute in the performance of its tax assessment duties."

¶6. In July 2009, Doss filed a pro se complaint. She named the Board, MSTC, and the AG as defendants. Doss noted that the county has an approximately 80% African-American population, and in effect the statute does not apply to any other county or power plant in the state. Doss added that other types of power plants in "majority white counties" are taxed differently than Grand Gulf, so "the taxes paid by the majority white taxpayers is substantially lower than the majority black taxpayers in Claiborne County." Doss reasoned that racial animus prompted the Legislature's enactment of the statute.

¶7. Doss alleged that the statute infringes on her equal-protection rights. Her rationale was premised on the concept that the statute is racially discriminatory, and her property taxes would decrease if the county could collect traditional ad valorem taxes from Grand Gulf. Doss also claimed the Board denied her due process regarding its treatment of her objections to the 2008 tax roll. Additionally, she claimed MSTC denied her due process when it did not hear her appeal. Finally, Doss claimed that the Board conspired with MSTC to violate her constitutional rights by complying with section 27-35-309(3)(b). Doss sought a declaratory judgment that the statute is unconstitutional, injunctive relief preventing its enforcement, and

5

more than $400 million in damages.[4]

¶8.   MSTC and the AG filed a motion to dismiss Doss's complaint. They argued that dismissal was appropriate under Rules 12(b)(1) and 12(b)(6) of the Mississippi Rules of Civil Procedure. The Board subsequently joined the motion to dismiss. After conducting a hearing, the circuit court granted the motion to dismiss on the basis that Doss had failed to state a claim upon which relief could be granted. Doss appeals.

DISCUSSION

I.   *Due Process and Conspiracy*

¶9.   In the "statement of relevant facts" section of her brief, Doss states that "the public was never notified of the Board['s] . . . final equalization decision which reflected the order of [MSTC] to continue to implement section 27-35-309(3)(b). The notification procedure is required pursuant to [section] 27-35-119 . . . ." And in the "summary of arguments" portion of her initial brief, Doss says that she "stated a cause of action against Mississippi [s]tate [o]fficials for their continued implementation of a tax scheme [that] violated" her due-process rights. Beyond that, her initial brief contains no mention of her due-process claim—much less authority to support it. And her initial brief contains absolutely no reference to her conspiracy claim.

¶10.   Doss's initial brief was required to include her "contentions . . . with respect to the issues presented, and the reasons for those contentions, with citations to the authorities,

_____

[4] Doss subsequently clarified that she only sought damages from the Board.

6

statutes, and parts of the record relied on."  M.R.A.P. 28(a)(7).  "In the absence of meaningful argument and citation of authority, [an appellate court] generally will not consider [an] assignment of error."  *Randolph v. State*, 852 So. 2d 547, 558 (¶29) (Miss. 2002).  A "cursory argument without . . . further reason or explanation" is inadequate.  *Id*. at (¶30).  For lack of meaningful arguments to support her conspiracy and due-process claims, we find that Doss has waived those issues on appeal.

II .  *Equal Protection*

¶11.    As a preliminary matter, we must determine whether Doss has standing to assert her claim that the statute is racially discriminatory because it allegedly increases her property tax burden.  "Standing is a jurisdictional issue" that an appellate court may raise at any time. *Hall v. City of Ridgeland*, 37 So. 3d 25, 33 (¶23) (Miss. 2010).  Furthermore, the motion to dismiss alleged that dismissal was appropriate under Rule 12(b)(1), which is based on a "[l]ack of jurisdiction over the subject matter[.]"  "Standing is an aspect of subject[-]matter jurisdiction." *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 826 (¶32) (Miss. 2009). An appellate court reviews standing de novo.  *SASS Muni-V LLC v. DeSoto Cty.*, 170 So. 3d 441, 445 (¶12) (Miss. 2015).

¶12.    In *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 338 (2006), a group of taxpayers sued the Ohio State Tax Commissioner and alleged "that their local and state tax burdens were increased by the tax breaks for DaimlerChrysler[.]"  As in the case presently before us, "the alleged injury [was] based on the asserted effect of the allegedly illegal activity on

7

public revenues, to which the taxpayer contributes." *Id*. at 344. The United States Supreme Court stated that "[a]s an initial matter, it is unclear that tax breaks of the sort at issue here do in fact deplete the treasury: The very point of the tax benefits is to spur economic activity, which in turn *increases* government revenues." *Id*. (emphasis in original). The *Cuno* Court went on to describe the taxpayers' claim as "conjectural or hypothetical in that it depends on how legislators respond to a reduction in revenue, if that is the consequence of the [tax] credit." *Id*.

> Establishing injury requires speculating that elected officials will increase a taxpayer-plaintiff's tax bill to make up a deficit; establishing redressability requires speculating that abolishing the challenged credit will redound to the benefit of the taxpayer because legislators will pass along the supposed increased revenue in the form of tax reductions.

*Id*. The Supreme Court concluded that "[n]either sort of speculation suffices to support standing." *Id*.

¶13. As the *Cuno* Court explained, "[a] taxpayer . . . has no right to insist that the government dispose of any increased revenue it might experience as a result of his suit by decreasing his tax liability or bolstering programs that benefit him." *Id*. at 344-45. "To the contrary, the decision of how to allocate any such savings is the very epitome of a policy judgment committed to the broad and legitimate discretion of lawmakers, which the courts cannot presume either to control or predict." *Id*. at 345. That "rationale . . . applies with undiminished force to state taxpayers." *Id*. "The taxpayer must be able to show that he has sustained some direct injury and not merely that he suffers in some indefinite way in common

8

with people generally." *Id*. Because the taxpayers lacked standing to challenge the tax credit, the Supreme Court held that "the lower courts erred by considering their claims against it on the merits." *Id*. at 354.

¶14. However, Mississippi's state standing requirements have been described as "quite liberal compared to the standing requirements set out in Article III of the United States Constitution." *SASS Muni-V*, 170 So. 3d at 445-46 (¶13). "To have standing to sue, a party must assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law." *Id*. at 446 (¶13). Notwithstanding the professed distinction between federal and state standing requirements, there is a distinct similarity. As the Supreme Court stated, a taxpayer cannot rely on a claim "that he suffers in some indefinite way in common with people generally." *Cuno*, 547 U.S. at 345. That statement is strikingly similar to the Mississippi Supreme Court's pronouncement that a plaintiff lacks standing unless he can show that "the [alleged] adverse effect experienced [is] different from the adverse effect experienced by the general public." *SASS Muni-V*, 170 So. 3d at 446 (¶13). So the *Cuno* Court's reasoning applies equally to Doss's claims.

¶15. Because Doss's claims rest solely on the general and speculative conclusion that the statute is racially discriminatory because it causes her property-tax liability to increase, she failed to establish standing. It follows that the circuit court lacked subject-matter jurisdiction over Doss's claim. Although the circuit court dismissed Doss's complaint on the basis that

9

it failed to state a claim upon which relief can be granted, "[i]t is well established in our jurisprudence that the right result reached for the wrong reason will not be disturbed on appeal." *Cucos Inc. v. McDaniel*, 938 So. 2d 238, 247 (¶26) (Miss. 2006). No further analysis is necessary. Accordingly, we find no merit to Doss's claim that the circuit court erred when it dismissed her complaint.

¶16. **THE JUDGMENT OF THE CLAIBORNE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. BARNES AND WESTBROOKS, JJ., NOT PARTICIPATING.**