## NISSAN MOTOR CORPORATION IN U.S.A *vs.* COMMISSIONER OF REVENUE.

Suffolk. February 7, 1990. - April 4, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation*, Appellate Tax Board: jurisdiction; Corporate excise; Abatement. *Constitutional Law*, Taxation, Commerce clause. *Due Process of Law*, Statute of repose. *Repose, Statute of. Limitations, Statute of.*

The Appellate Tax Board correctly ruled that it was without jurisdiction to act on a California corporation's requests for abatement of certain taxes, where the applications were filed beyond the time limits for seeking abatements set forth in G. L. c. 62C, § 37. [157-159]

A corporation that failed to challenge by timely action under G. L. c. 62C, § 37, a decision of the Commissioner of Revenue assessing a certain excise tax was precluded from challenging the merits of that decision on a later appeal from the denial of its untimely applications for abatement. [159]

No violation of the commerce clause of the United States Constitution or the due process rights of an out-of-State corporation was demonstrated by the application to it of the time limits set forth in G. L. c. 62C, § 37, for seeking a tax abatement for an allegedly mistaken tax assessment. [159-161]

There was no merit to an out-of-State corporation's claim for equitable relief from the operation of G. L. c. 62C, § 37, which barred the corporation's application for abatement of an allegedly mistaken tax assessment. [161-162]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul F. Doyle* of New York (*Sandra K. Rotter* of New York, with him) for the taxpayer.

*Countess C. Williams*, Assistant Attorney General, for the Commissioner of Revenue.

LYNCH, J. In April, 1987, the plaintiff, Nissan Motor Corporation in U.S.A (Nissan), filed applications for abatement of those portions of its 1979 through 1983 Massachusetts corporate excise taxes based on sales in the State of New York (New York). The applications were filed after the expiration of all the specific time limits for seeking abatements set out in G. L. c. 62C, § 37 (1988 ed.), and the Commissioner of Revenue (commissioner) so held. However, Nissan claimed that it was not until a 1986-1987 audit in New York that it learned it was liable to New York for taxes during the same years, on the very same sales income that formed part of the basis of the 1979-1983 excise taxes Nissan paid in Massachusetts, and thus discovered it might possess a claim for partial abatement of those taxes paid Massachusetts. The Appellate Tax Board (board) agreed with the commissioner and dismissed Nissan's appeals, stating that it had no jurisdiction of the matter. Nissan timely sought review in the Appeals Court, and we transferred the case here on our own motion. We affirm the decision of the board.

The facts in this case are not in dispute. Nissan, a California corporation, maintains regional offices in several States, including Massachusetts. The Mansfield office is responsible for handling the receipt and shipment of orders for Nissan vehicles and parts to be sold in a number of States in the Northeast.

Since 1974, Nissan has filed corporate excise tax returns in Massachusetts. After a 1982 audit of the company's 1979 and 1980 corporate excise tax returns, the commissioner decided that G. L. c. 63, § 38 (*f*) (1988 ed.), income attributable to regional, but out-of-State, Nissan sales that were not taxable in those States could be taxed as income earned in Massachusetts, since those transactions were coordinated through the Mansfield office.[1] Under this ruling Nissan sales

---

[1] General Laws c. 63, § 38 (*f*) (2), deems sales of tangible property to have occurred in the Commonwealth if "the corporation is not taxable in the state of the purchaser and the property was not sold by an agent or agencies chiefly situated at, connected with or sent out from premises for

in New York, Connecticut, Maine, Vermont, and Pennsylvania became taxable in Massachusetts.

Nissan lodged an immediate "protest," which the commissioner denied.[2] The company took no action to appeal from the adverse ruling. Rather, Nissan proceeded to pay the additional taxes assessed by the Commonwealth for 1979 and 1980. Thereafter, it filed returns and paid Massachusetts corporate excise taxes for tax years 1981 through 1983 based on a computation including the out-of-State sales, in accordance with the application of G. L. c. 63, § 38 (*f*), defined by the commissioner in the 1982 audit.

Nor did Nissan seek an abatement of the taxes within the time period provided by the statute. Under G. L. c. 62C, § 37, "[a]ny person aggrieved by the assessment of a tax . . . may apply in writing to the commissioner . . . for an abatement thereof at any time *within three years from the last day for filing the return of such tax*, determined without regard to any extension of time, *within two years from the date the tax was assessed*, or deemed to be assessed, or *within one year from the date that the tax was paid, whichever is later*" (emphasis added).

Nissan stopped factoring the New York sales into its computation of Massachusetts excise taxes beginning with the tax year ending September, 1984, the year for which it filed corporate tax returns in New York for the first time. Subsequently, New York began an audit of Nissan's records and concluded, in 1987, that the company had been delinquent since 1976, from which year on it should have been filing tax returns and paying franchise taxes reflecting income earned

---

the transaction of business owned or rented by the corporation outside this commonwealth."

[2] The record itself does not reveal the basis for Nissan's "protest" to the commissioner following the 1982 audit. In its brief, however, Nissan asserts that it specifically challenged that portion of the tax based on sales in New York, arguing that contacts between the Mansfield regional office and New York were too attenuated to be validly taxed by Massachusetts, under both the statute itself and the United States Constitution's commerce and due process clauses.

from its sales in New York.[3] On the heels of the New York audit, in March, 1987, the commissioner began an audit of Nissan for its 1983 Massachusetts excise tax.

On April 9, 1987, Nissan filed its applications for abatement of so much of the 1979-1983 corporate excise taxes that were based on New York sales, a total it claimed amounted to $527,549.[4] The commissioner denied the applications on December 11, 1987, citing Nissan's failure to file within the time limits of c. 62C, § 37. Nissan sought review by the board. On July 22, 1988, the board granted the commissioner's motions to dismiss for lack of jurisdiction, based on the applications' untimeliness.

In this appeal, Nissan challenges the board's decision on a number of grounds. First, it asserts that the time limitations for filing an abatement should have been measured from the date New York's audit informed Nissan it was liable in New York for taxes on its New York sales, because prior to that point it would have been "inherently unknowable" to Nissan that it had a claim for abatement of its 1979-1983 excise taxes in Massachusetts. Second, Nissan argues that, on the merits, the Commonwealth's application of G. L. c. 63, § 38 (*f*), to its New York sales at the time of the 1982 audit was erroneous.[5] Finally, Nissan states that the Commonwealth's strict construction of the statutory abatement time limita-

---

[3]The tax rate applied by New York, and eventually paid by Nissan, on its 1979-1983 sales was 10%. Nissan had been assessed a 9½% corporate excise tax rate by Massachusetts on the very same 1979-1983 New York sales.

[4]This figure is derived from Nissan's requested abatement of $9,613 in 1979, $67,658 in 1980, $69,976 in 1981, $169,001 in 1982, and $211,301 in 1983.

[5]At oral argument, Nissan altered this position, and asserted that the Commonwealth was correct in 1982, when it applied c. 63, § 38 (*f*), to its income from New York sales, and that the Commonwealth's action became erroneous only after the conclusions reached by New York at the end of its audit in 1987. Because this argument was not raised before the board, and indeed diverges from the one presented in the brief to us, it is unnecessary for us to consider it here. *General Elec. Co.* v. *Assessors of Lynn*, 393 Mass. 591, 608 (1984). We address only the position as framed before the board and in the brief.

tions, unmodified by a "discovery rule," coupled with an erroneous use of c. 63, § 38 (*f*), amounted to a violation of the United States Constitution's commerce clause, and unconstitutional denial of Nissan's rights under the due process clause.

1. *The time limits on filing for tax abatements.* It has long been the law of this Commonwealth that, when a remedy is created by statute, and the time within which it may be availed of is one of the prescribed conditions for relief, failure to meet that time limit deprives a judicial body, court, or administrative appeals board of jurisdiction to hear the case. *Greeley* v. *Zoning Bd. of Appeals of Framingham*, 350 Mass. 549, 552 (1966). The remedy thus becomes unavailable after the statutory deadline. *Sullivan* v. *Jordan*, 310 Mass. 12, 17 (1941).

That rule applies to filing for abatements of taxes alleged to have been incorrectly assessed. The board lacks subject matter jurisdiction over abatement proceedings where the process was commenced at a later time or prosecuted in any manner different from that dictated by statute. *Shea* v. *Commissioner of Revenue*, 390 Mass. 1001 (1983) (improper service of petition for abatement). *Children's Hosp. Medical Center* v. *Assessors of Boston*, 388 Mass. 832, 838 (1983) (failure to file required documents for consideration for exemption). *Nature Church* v. *Assessors of Belchertown*, 384 Mass. 811, 812 (1981) (appeal filed two days after statutory time limits). *Aetna Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 323 Mass. 657, 660 (1949) (failure to use approved form for application for abatement).

Nissan, clearly having filed its abatement applications after the deadlines established by c. 62C, § 37, seeks to avoid the application of this principle of law, by asking this court, (a) to engraft a "discovery rule" onto the time limitation statute for seeking an abatement, and (b) to decide that the circumstances of Nissan's case merit application of it. We decline to do either.

Under the "discovery rule," which applies in certain tort actions, a particular cause of action "accrues" only when the

plaintiff learns, or with the exercise of reasonable diligence, should have learned, that he or she has been harmed by the defendant's conduct. *Flynn* v. *Associated Press*, 401 Mass. 776, 780 (1988). *Dinsky* v. *Framingham*, 386 Mass. 801, 803 (1982). *Franklin* v. *Albert*, 381 Mass. 611, 612 (1980).

The most fundamental of several flaws in Nissan's request is that the "discovery rule grew out of the need to determine when a cause of action 'accrued.' When the Legislature limits the time within which suit can commence from the date of accrual, it leaves to the court the determination of the precise meaning of the term accrued." *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112, 116 (1988). See *Flynn* v. *Associated Press, supra* (construing G. L. c. 260, § 4: "[a]ctions for . . . libel . . . shall be commenced only within three years next after the cause of action accrues"); *Franklin* v. *Albert, supra* (construing another portion of the same statute: "[a]ctions of contract or tort for malpractice . . . against physicians . . . shall be commenced only within three years next after the cause of action accrues"). It is quite clear that, when the statute on its face is specific as to the definitely established event that starts the ticking of the statute's time clock, there is no room for engaging in such judicial construction. *Pobieglo* v. *Monsanto Co., supra.* In *Pobieglo*, therefore, we held the "discovery rule" was inapplicable to wrongful death actions, where G. L. c. 229, § 2, provided: "An action to recover damages . . . shall be commenced within three years from the date of death . . . ."

General Laws c. 62C, § 37, does not speak in terms of "accrual" of the remedy for a tax abatement. Rather, like the wrongful death statute, it is a statute of repose, limiting the time within which the action it creates may be brought, without any regard to the accrual of an action. *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982). "It does not lie within our power to provide the excuse for those who fail to comply with" the dictates of a clear statute. *William Rodman & Sons* v. *State Tax Comm'n*, 364 Mass. 557, 560 (1974).

Furthermore, in this case, even Nissan's claim of inherent unknowability is dubious. Nissan asserts it filed a "protest"

immediately after the commissioner's 1982 tax audit that made the company liable for Massachusetts excise taxes on New York sales for the first time. Nissan did not appeal the denial of its protest, nor did it take the option of then paying the tax and immediately filing for an abatement. The company, from the start, disputed the validity of the tax, yet offers no explanation as to why it did not timely pursue the remedies available to it in Massachusetts. Nissan was apparently on notice in 1982 that it might have a claim for a refund because of the commissioner's assessment of a tax on the company's New York sales, yet Nissan failed to familiarize itself with the New York tax code at that time.

In addition, the record demonstrates that Nissan stopped paying taxes to Massachusetts on the basis of its New York sales as of the tax year ending September, 1984, the first year for which it filed a New York franchise tax form. The parties agree that until March 15, 1985, Nissan would have been within the c. 62C, § 37, time limits for seeking the abatements in Massachusetts on taxes paid in all the years it was contesting, 1979 through 1983. Yet it did not file any application for abatement in Massachusetts until 1987. In these circumstances, we discredit Nissan's assertion that its New York sales tax liability was "inherently unknowable" until 1987, and thus their argument for the application of a discovery rule lacks another essential underpinning.

2. *The merits of applying G. L. c. 63, § 38 (f)*. Because we hold that Nissan is too late in asking Massachusetts to abate a portion of its 1979-1983 corporate excise taxes, Nissan is also precluded from challenging the merits of the commissioner's decision to apply c. 63, § 38 (*f*), to tax the company's New York sales. The arguments on this score could only be properly raised by a timely action under c. 62C, § 37. This includes even constitutional claims, which can be equally time barred if not brought in compliance with a statutory deadline. *Block* v. *North Dakota ex rel. Bd. of Univ. & School Lands*, 461 U.S. 273, 292 (1983).

3. *Constitutionality of applying abatement time bar to allegedly erroneously collected tax*. Nissan does not contest

the constitutionality of either c. 63, § 38 (*f*), under which the Commonwealth may tax out-of-State sales connected to a company's presence in Massachusetts if they are not taxable in those States, or c. 62C, § 37, which established an abatement remedy for challenging tax assessments under c. 63, § 38 (*f*) (among other provisions) and limited the time for invoking this remedy. Nissan argues only that the combination of an allegedly mistaken tax assessment under the former, and the strict application of the deadlines of the latter, with no moderation for late discovery of tax liability in another State, violates the commerce clause of the United States Constitution, and its due process rights under the Fourteenth Amendment to the United States Constitution. We disagree.

If the corporate excise tax formula of c. 63, § 38 (*f*), is constitutionally valid under the commerce clause, as Nissan does not dispute, then the mere fact that an error may occur in the Commonwealth's computation of it, and that the taxpayer then has the time set out in c. 62C, § 37, to seek an abatement does not render the scheme unconstitutional. The purpose of the commerce clause is to protect interstate commerce from discrimination or regulation by the States or from action, such as a tax, which imposes a direct and immediate burden on such commerce. *Commissioner of Corps. & Taxation* v. *Ford Motor Co.*, 308 Mass. 558, 569-570 (1941). Both the c. 63, § 38 (*f*), tax itself and the abatement remedy apply to domestic and foreign corporations engaged in interstate commerce alike. Nissan's assertion that local businesses do not face the "risk" interstate businesses do, of paying tax twice to two different States by the Commonwealth's erroneous application of c. 63, § 38, ignores the fact that a taxpayer like Nissan is charged with knowledge of the tax laws wherever it does business, see *Atkins* v. *Parker*, 472 U.S. 115, 130 (1985); *Wilkinson* v. *New England Tel. & Tel. Co.*, 327 Mass. 130 (1951), and has several years, under c. 62C, § 37, to seek the remedy of abatement if a tax is incorrectly assessed. Local businesses, too, are in peril of er-

roneous tax assessment, and are limited to the c. 62C, § 37, deadlines, which Nissan has not challenged as unreasonable.

The fact that Nissan stands today in the unfortunate position of having paid tax on the same income twice to two different States is not the fault of either Massachusetts or New York. Engaging in "interstate commerce" is no talisman freeing Nissan from meeting reasonable deadlines set by the Legislature for bringing a complaint against assessment of a corporate excise tax in Massachusetts. *George S. Carrington Co.* v. *State Tax Comm'n*, 375 Mass. 549, 551 (1978). The commerce clause does not grant immunity to foreign corporations from such State taxation that does not directly oppress interstate commerce. *Commissioner of Corps. & Taxation* v. *Ford Motor Co.*, *supra* at 570.

Nor does application of the statute of repose in c. 62C, § 37, to bar Nissan's late attack on its 1979-1983 taxes deprive the company of property without due process of law. While due process requires the Commonwealth to afford the taxpayer notice of, and opportunity to challenge, a tax assessment, the Commonwealth may condition recourse to this opportunity on compliance with such matters as time limitations. *Old Colony R.R.* v. *Assessors of Boston*, 309 Mass. 439, 443-444 (1941). *Burbridge* v. *Assessors of Lexington*, 11 Mass. App. Ct. 546, 549 (1981). Application of a statute of repose or limitations does not violate due process because there is no absolute and unconditional right to come into court at any time, *Ciccarelli* v. *Carey Canadian Mines Ltd.*, 757 F.2d 548, 554 (3d Cir. 1985), even when the violation claimed on the merits is a constitutional one, *Block* v. *North Dakota ex rel. Bd. of Univ. & School Lands*, 461 U.S. 273, 292 (1983), or a meritorious one, *Budget Rent-a-Car of Tulsa* v. *Oklahoma Tax Comm'n*, 773 P.2d 736, 741 (Okla. 1989).

It should be noted that in the tax context, statutory time limits have special significance. A tax system without a final point at which accounts are declared settled — under which both taxpayer and government stand forever on guard, receipts and other facts proving valuation and conduct of busi-

ness, forever at the ready — "would be all but intolerable, at least Congress has regarded it as ill-advised," the United States Supreme Court has observed. *Rothensies* v. *Electric Storage Battery Co.*, 329 U.S. 296, 301 (1946). "[A] statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy." *Id.*

Nissan's complaint, in its essence, is that application to it of the statute of repose for abatement proceedings is simply unfair, because the company has had to pay tax twice on the same income, which suggests Massachusetts may have erroneously applied its corporate excise tax statute. Even if we were to agree, it is not the task of the courts to "adjust" the time limits of tax statutes where their application would appear unjust or inequitable. *Badaracco* v. *Commissioner of Internal Revenue*, 464 U.S. 386, 398 (1984). *Springfield Sugar & Prods. Co.* v. *State Tax Comm'n*, 381 Mass. 587, 591 (1980). *Boston* v. *Mac-Gray Co.*, 371 Mass. 825, 828 (1977). Statutes of limitation "are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim . . . . They have come into the law not through the judicial process but through legislation." *Rothensies* v. *Electric Storage Battery Co.*, *supra* at 301-302, quoting *Chase Secs. Corp.* v. *Donaldson*, 325 U.S. 304, 314 (1945). In the tax area, both the taxpayer and the government sometimes lose and sometimes gain by these statutes' operation. Were the courts to get involved with equitable remedies on a case-by-case basis, "we would seriously undermine the statute of limitations in tax matters." *Rothensies*, *supra* at 302. "[A]rguments as to hardship . . . [are] appropriate respecting the enactment of legislation. They are not controlling in the interpretation of existing statutes." *Klein* v. *Catalano*, 386 Mass. 701, 713 (1982), quoting *Eastern Mass. St. Ry.* v. *Trustees of Eastern Mass. St. Ry.*, 254 Mass. 28, 33 (1925).

The decision of the Appellate Tax Board is affirmed.

*So ordered.*