# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-01295-SCT

*MICHAEL KANSLER AND VICKIE KANSLER*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/2017 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | ALEXIS L. FARMER |
| | JON FRANCIS CARMER, JR. |
| | JOHN FLOYD FLETCHER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN FLOYD FLETCHER |
| | ADAM STONE |
| | KAYTIE MICHELLE PICKETT |
| ATTORNEYS FOR APPELLEE: | JON FRANCIS CARMER, JR. |
| | BRIDGETTE TRENETTE THOMAS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/29/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., MAXWELL AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     Michael and Vickie Kansler moved to Mississippi from New York for Michael's job and, over the following years, exercised stock options stemming from that employment. The Kanslers took the position that the stock options' income was taxable only in Mississippi, which reduced their tax burden significantly. New York saw things differently and found a substantial portion of the income taxable by it. This liability to another state would have

entitled the Kanslers to a credit on their Mississippi taxes worth more than $250,000—but by the time the New York audit was finished, our statute of limitations barred the Kanslers from amending their Mississippi returns. They now argue our statute of limitations unconstitutionally discriminates against interstate commerce.

¶2.     Mississippi's treatment of the statute of limitations for amending tax returns is unremarkable and appears to be shared with many other states.[1] The Kanslers' dormant Commerce Clause argument, on the other hand, is novel. And it depends on an unprecedented and erroneous attempt to apply the "internal consistency test," intended to evaluate the apportionment of taxes, to the collateral effects of a statute of limitations. We hold that the challenge is instead governed by the discrimination/***Pike***[2] balancing test employed by the United States Supreme Court in ***Bendix Autolite Corp. v. Midwesco Enterprises Inc.***, 486 U.S. 888, 108 S. Ct. 2218, 100 L. Ed. 2d 896 (1988), the only United States Supreme Court case to scrutinize a statute of limitations under the dormant Commerce

---

[1] The Kanslers point out in their brief that at least two states have statutes permitting amendment on the taxpayer's initiative in response to a sister state's audit—Massachusetts and Oregon. The statutes of our neighboring states appear to be consistent with ours and lack any obvious exception for refunds sought as a result of sister-state audits. *See* Ala. Code § 40-2A-7(c)(2)(a) (2018) (petition for refund must be filed "within . . . three years from the date that the return was filed, or . . . two years from the date of payment of the tax"); Ark. Code Ann. § 26-18-306(i)(1)(a) (2018) (tax refund claim "shall be filed by the taxpayer within three (3) years from the time the return was filed or two (2) years from the time the tax was paid, whichever of the periods expires later"); La. Stat. Ann. § 47:1623(A) (2015) (taxpayer must seek refund either three years from December 31 the tax became due or within a year the tax was paid); Tenn. Code Ann. § 67-1-1802(a)(1)(A) (2011) (tax refund claim must be filed within "three (3) years from December 31 of the year in which the payment was made").

[2] ***Pike v. Bruce Church Inc.***, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970).

Clause. While ***Bendix*** and its ilk offer little guidance—Justice Scalia famously compared the ***Pike*** balancing test to trying to decide "whether a particular line is longer than a particular rock is heavy"[3]—the Kanslers' challenge fails because our statute of limitations is facially nondiscriminatory and has only an incidental effect on interstate commerce, one that is justified by the practical difficulties of tax administration and the State's interest in finality. The Kanslers bear the burden of proving otherwise, so any uncertainty must be resolved against their challenge. We affirm the Mississippi Department of Revenue's decision to refuse the refund request.

## FACTS AND PROCEDURAL HISTORY

¶3. This case comes up on summary judgment. The facts are not disputed, and the following facts are drawn from the facts stipulated in the chancery court.

¶4. Michael Kansler worked for Entergy in New York, and he received stock options as part of his compensation. The Kanslers lived in New York until they were relocated to Mississippi in May 2007. During 2008 and 2009, Michael was still employed by Entergy in Mississippi. The Kanslers timely filed their Mississippi tax returns for the 2008 and 2009 tax years and paid taxes on their worldwide income, as required by Mississippi law. Some of that income derived from Michael's stock options. The stock options had been granted over several years before the Kanslers moved to Mississippi. The options vested over multiple years, including after the Kanslers moved to Mississippi.

¶5. In 2012, New York began an audit of the Kanslers' taxes related to the exercise of

---

[3] *See **Bendix***, 486 U.S. at 897 (Scalia, J., concurring).

stock options in 2008, 2009, and 2010. On December 29, 2014, New York completed the audit and assessed the Kanslers additional tax and interest. The Kanslers paid the assessment on December 31, 2014. In January 2015, the Kanslers filed amended Mississippi tax returns and requested a refund of $257,140 based on the credit allowed for income taxes paid to other states.[4] The Mississippi Department of Revenue denied the refund request because it was outside of the three-year limitations period.[5] The Kanslers appealed to the Department's Board of Review and then to the Mississippi Board of Tax Appeals, both of which affirmed the Department's decision. The Kanslers challenged the constitutionality of the limitations period in both appeals, but each body affirmed the Department's decision based on the text of the statute without considering its constitutionality. The Kanslers then appealed to the Chancery Court of the First Judicial District of Hinds County, arguing that the limitations period under Section 27-7-313 violates the Commerce, Due Process, and Equal Protection Clauses of the United States Constitution, and that the Department's actions were arbitrary, capricious, and beyond its statutory authority. Both parties filed motions for summary judgment. The chancellor granted the Department's motion and denied the Kanslers' motion, finding that the refund limitations period does not violate the United States Constitution. The Kanslers appeal from that judgment.

**STANDARD OF REVIEW**

¶6.     This Court reviews a chancellor's grant or denial of summary judgment de novo.

---

[4] Miss. Code Ann. § 27-7-77 (Rev. 2017).

[5] Miss. Code Ann. § 27-7-313 (Rev. 2017).

4

***Miss. Dep't of Revenue v. AT & T Corp.***, 202 So. 3d 1207, 1213 (Miss. 2016). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶7. We also apply a de novo standard of review when deciding the constitutionality of a state statute. ***Commonwealth Brands, Inc. v. Morgan***, 110 So. 3d 752, 758 (Miss. 2013) (citing ***Johnson v. Sysco Food Servs.***, 86 So. 3d 242, 243 (Miss. 2012)). Statutes "come before us clothed with a heavy presumption of constitutional validity." ***Ex rel. T.L.C.***, 566 So. 2d 691, 696 (Miss. 1990), *overruled on other grounds by* ***In re J.T.***, 188 So. 3d 1192 (Miss. 2016)). "The party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect." ***Id.*** (citations omitted).

¶8. Also potentially relevant is Mississippi Code Section 27-77-7(5) (Rev. 2017), which provides in relevant part,

> At trial of any action brought under this section, the chancery court shall give no deference to the decision of the Board of Tax Appeals, the Board of Review or the Department of Revenue, but shall give deference to the department's interpretation and application of the statutes as reflected in duly enacted regulations and other officially adopted publications. The chancery court shall try the case de novo and conduct a full evidentiary judicial hearing on all factual and legal issues raised by the taxpayer which address the substantive or procedural propriety of the actions of the Department of Revenue being appealed.

But this provision has not been not cited by the Department of Revenue in its brief, nor has

the Department cited any "duly enacted regulations" or "other officially adopted publications" relevant to our analysis.

## DISCUSSION

### I.  Dormant Commerce Clause

¶9.  The Kanslers argue Mississippi's three-year statute of limitations for amending a taxpayer's return impermissibly burdens interstate commerce because it does not give taxpayers enough time to amend a Mississippi tax return after an audit by another state, which can take far longer than three years.  They contend that this violates the negative or dormant aspect of the Commerce Clause of the United States Constitution because in-state taxpayers do not suffer the same difficulty.

### A.  The Dormant Commerce Clause

¶10.  The Constitution gives Congress the authority to regulate interstate commerce.  U.S. Const. art. I, § 8, cl. 3.  But "[a]lthough the Clause is framed as a positive grant of power to Congress, [the United States Supreme Court has] consistently held [it] to contain a further, negative command, known as the dormant Commerce Clause." *Maryland v. Wynne*, 135 S. Ct. 1787, 1794, 191 L. Ed. 2d 813 (2015).  The dormant aspect of the Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330, 116 S. Ct. 848, 133 L. Ed. 2d 796 (1996).  Absent congressional approval, a state may not discriminate against or impose excessive burdens upon interstate commerce. *Wynne*, 135 S. Ct. at 1794.  "In the absence of conflicting federal legislation the States retain

authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 36, 100 S. Ct. 2009, 64 L. Ed. 2d 702 (1980).

¶11.     State laws that discriminate against interstate commerce "face a virtually per se rule of invalidity." *Granholm v. Heald*, 544 U.S. 460, 476, 125 S. Ct. 1885, 161 L. Ed. 2d 796 (2005).  But when a state law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits"; this is the *Pike* balancing test.  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970).  "[T]hese two principles guide the courts in adjudicating cases challenging state laws under the Commerce Clause," but they are, as the Supreme Court recently put it, "subject to exceptions and variations." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091, 201 L. Ed. 2d 403 (2018).  Others have been less charitable, saying the dormant Commere Clause jurisprudence remains a "quagmire" that offers "little in the way of precise guides to the States in the exercise of their indispensable power of taxation." *DIRECTV v. Utah State Tax Comm'n*, 364 P.3d 1036, 1049 (Utah 2015) (quoting *Nw. States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S. Ct. 357, 3 L. Ed. 2d 421 (1959)).

### B.  The Mississippi Statutes at Issue

¶12.     Mississippi taxes the worldwide income of its residents. *See* Miss. Code Ann. § 27-7-5 (Rev. 2017).  To avoid double taxation, Mississippi offers a credit for income taxes paid

to other states. *See* Miss. Code Ann. § 27-7-77 (Rev. 2017). This credit, however, is limited to how much Mississippi would have taxed the income. Miss. Code Ann. § 27-7-77(2)(c) (Rev. 2017). Since New York has a higher income tax rate, the Mississippi credit would have been less than the tax assessed by New York. Or, put another way, claiming the income as earned in Mississippi would have reduced the Kanslers' total tax burden—if New York had gone along with it.

¶13. While the facts are not fully developed in the record, the Kanslers appear to have contested their New York tax liability; they assert that their final New York liability was "substantially less" than that state originally sought. The tax returns at issue were for tax years 2008 and 2009. The New York audit was completed in late 2014. The Kanslers tried to amend their Mississippi tax returns in January 2015, but by then the statute of limitations had run.

¶14. Mississippi Code Section 27-7-313 (Rev. 2017) provides,

> No refund shall be granted under this article or under the provisions of Article 1 of this chapter unless a claim for the refund is made within three (3) years from the date the return is due, or within three (3) years from the final day of an extension period previously granted by the commissioner pursuant to the provisions of Section 27-7-50; however, the restrictions imposed by this section do not apply to those refund requests or claims made in compliance with Section 27-7-49.

Mississippi Code Section 27-7-49 (Supp. 2008) further provided, in relevant part and at the relevant time,[6]

---

[6] Section 27-7-49 was amended in 2013 to limit the time for a Mississippi audit to one year after the original three-year examination period. *See* 2013 Miss. Laws ch. 470 (H.B. 892), § 1, eff. Jan. 1 2013. It does not appear that this affects the issues at hand.

(1) Returns shall be examined by the commissioner or his duly authorized agents within three (3) years from the due date or the date the return was filed, whichever is later, and no determination of a tax overpayment or deficiency shall be made by the commissioner, and no suit shall be filed with respect to income within the period covered by such return, after the expiration of said three-year period, except as hereinafter provided.

(2) When an examination of a return made under this article has been commenced, and the taxpayer notified thereof . . . within the three-year examination period provided in subsection (1) of this section, the determination of the correct tax liability may be made by the commissioner after the expiration of said three-year examination period, provided that said determination shall be made with reasonable promptness and diligence.

(3) Where the reported taxable income of a taxpayer has been increased or decreased by the Internal Revenue Service, the three-year examination period provided in subsection (1) of this section shall not be applicable, insofar as the Mississippi income tax liability is affected by the specific changes made by said Internal Revenue Service. However, no additional assessment or no refund shall be made under the provisions of this article after three (3) years from the date the Internal Revenue Service disposes of the tax liability in question.

(4) The three-year examination period provided in subsection (1) of this section shall not be applicable in the case of a false or fraudulent return with intent to evade tax.

(5) A taxpayer may apply to the commissioner for revision of any return filed under this article at any time within three (3) years from the due date, or if an extension of time to file was granted, three (3) years from the date the return was filed. If the return is not filed by the time authorized by the extension, then the three (3) years begin to run from the final day of the extension period.

¶15.  In summary, the taxpayer has three years from the due date of her return to apply for

a revision.  *See* Miss. Code Ann. § 27-7-49(5) (Supp. 2008).  The other four subsections

appear to extend the limitations period only for a revision at the behest of the Department of

Revenue, but the Kanslers assert (and the Department does not appear to disagree) that the

Department will give the taxpayer the benefit of previously unclaimed credits or reductions

9

in tax liability if they are found during the course of its audit.

### C. *Complete Auto* and The Kanslers' Argument

¶16.    Before determining whether Mississippi's refund limitations period burdens interstate commerce, we must decide how to characterize what has happened to the Kanslers. The Kanslers urge us to judge the Mississippi statute of limitations under one of those "exceptions and variations" alluded to by the Supreme Court in *Wayfair*, the *Complete Auto* test.  *See Wayfair*, 138 S. Ct. at 2091.  Under the *Complete Auto* test, to avoid violating the dormant Commerce Clause, "a tax must: (1) be imposed on an activity with a substantial nexus with the taxing state; (2) be fairly apportioned, based on the activity within the taxing state; (3) not discriminate against interstate commerce; and (4) be fairly related to services provided by the taxing state." *Commonwealth Brands, Inc. v. Morgan*, 110 So. 3d 752, 758 (Miss. 2013) (citing *Complete Auto Transit Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977)).

¶17.    But the *Complete Auto* test is specifically intended for evaluating the constitutionality of taxes, not state regulations in general.  *See Complete Auto*, 430 U.S. at 274 (addressing "the perennial problem of the validity of a state tax . . . .").  In *Mississippi Department of Revenue v. AT&T Corp.*, 202 So. 3d 1207, 1216 (2016), this Court agreed that "[t]he United States Supreme Court has applied *Complete Auto* to invalidate a wide range of state tax credits, deductions and exemptions," but we are not aware of any decisions applying the test to a statute of limitations, even when it is related to taxes.  Nor do the Kanslers offer any such authority.

¶18. In *Direct Marketing Association v. Brohl*, 814 F.3d 1129 (10th Cir. 2016), the United States Court of Appeals for the Tenth Circuit rejected a challenge to a Colorado law that imposed notice and reporting requirements on out-of-state retailers. The reporting requirements were intended to facilitate Colorado's collection of use taxes from its own residents who were avoiding sales taxes by buying goods online from retailers without a physical presence in the state. *See id.* at 1133. The challenge to the law was based on *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992), *overruled by Wayfair*, 138 S. Ct. at 2099. *Quill* had held that prior decisions prohibiting states from compelling out-of-state retailers to collect sales taxes were still good law under the *Complete Auto* test. *See Quill*, 504 U.S. at 311. The Tenth Circuit ultimately concluded that the "*Complete Auto* [test] does not apply . . . because this case involves a reporting requirement and not a tax." *Brohl*, 814 F.3d at 1133.

¶19. Similarly, in *Xcaliber International Ltd., LLC v. Ieyoub*, 377 F. Supp. 2d 567, 569-70 (E.D. L.A. 2005), *vacated on other grounds sub nom. Xcaliber International Ltd., LLC v. Foti*, 442 F.3d 233 (5th Cir. 2006), the United States District Court for the Eastern District of Louisiana considered a statute requiring tobacco companies not participating in the 1998 settlement to put a small amount of money in escrow for each of their cigarettes sold in Louisiana. The manufacturers alleged this violated the dormant Commerce Clause under the *Complete Auto* test, but the district court disagreed:

> Plaintiffs argue that their Commerce Clause claim should be judged by the standards announced in cases such as *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992) and *Complete Auto Transit v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977). These cases,

11

however, involved the "limits" the Commerce Clause placed "on the taxing powers of the States." ***Quill***, 504 U.S. at 305, 112 S. Ct. 1904. The amended escrow statute does not impose a tax on tobacco manufacturers, rather an escrow payment which may be accessed by the state only if it obtains a judgment against or enters into settlement with the manufacturer. Because the amended escrow statute is not a tax or other "revenue-raising measure designed to line the State's coffers," the test utilized by the ***Quill/Complete Auto Transit*** line of cases does not apply. ***Star Scientific, Inc. v. Carter***, 2001 WL 1112673, at *9 (S.D. Ind. Aug. 20, 2001); *see also* ***American Target Advertising, Inc. v. Giani***, 199 F.3d 1241, 1254-55 (10th Cir.) (holding that because ***Quill*** and related cases "concern the levy of taxes upon out-of-state entities," they govern only the analysis of tax burdens) (emphasis in original), *cert. denied*, 531 U.S. 811, 121 S. Ct. 34, 148 L. Ed. 2d 14 (2000); ***Ferndale Lab., Inc. v. Cavendish***, 79 F.3d 488, 494 (6th Cir.1996) (holding that because "virtually every precedent relied upon by the Court in deciding ***Quill*** was concerned with attempts by states to tax interstate commerce," ***Quill*** applies only if a state attempts to tax interstate transactions).

***Xcaliber***, 377 F. Supp. 2d at 578.

¶20.     This Court has applied the ***Complete Auto*** test in six reported decisions, each time addressing a tax.  *See* ***Miss. Dep't of Revenue v. AT & T Corp.***, 202 So. 3d 1207, 1216-18 (Miss. 2016) (tax exemption for certain dividends); ***Morgan***, 110 So. 3d at 758 (tax on cigarettes sold by tobacco companies not participating in settlement); ***Miss. State. Tax Comm'n v. Murphy Oil USA***, 933 So. 2d 285, 293 (Miss. 2006) (franchise tax); ***Thomas Truck Lease Inc. v. Lee County***, 768 So. 2d 870, 876 (Miss. 1999) (ad valorem tax); ***Weeks Dredging & Contracting, Inc. v. Miss. State Tax Comm'n***, 521 So.2d 884, 889 (Miss. 1988) (Alabama sales tax); ***Marx v. Truck Renting and Leasing Ass'n, Inc.***, 520 So. 2d 1333, 1341 (Miss. 1987) (sales tax), *overruled on other grounds by* ***Morgan***, 110 So. 3d at 761-62.

¶21.     Ultimately, it makes little difference whether we formally employ the ***Complete Auto*** test.  Two of its prongs are not invoked in this case, one is essentially the traditional

discrimination/*Pike* balancing test, and the last—apportionment—is erroneously applied by the Kanslers. As noted above, under *Complete Auto*, "a tax must: (1) be imposed on an activity with a substantial nexus with the taxing state; (2) be fairly apportioned, based on the activity within the taxing state; (3) not discriminate against interstate commerce; and (4) be fairly related to services provided by the taxing state." *Morgan*, 110 So. 3d 752, 758 (Miss. 2013).

¶22. The Kanslers do not contest that our statute passes under prongs one (substantial nexus) and four (fairly related to services provided by the taxing state). Notably these two prongs left unchallenged have actually been applied to analyze collateral burdens similar to those alleged in today's case. In *South Dakota v. Wayfair Inc.*, 138 S. Ct. 2080, 2091, 201 L. Ed. 2d 403 (2018), and *Quill Corp. v. North Dakota*, 504 U.S. 298, 313, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992) (overruled by *Wayfair*), the United States Supreme Court considered whether requiring *collection* of sales taxes by mail-order retailers placed an undue burden on interstate commerce. The Supreme Court weighed whether a physical presence in the taxing state was needed to justify the burden on the retailers of complying with that state's tax schemes, or whether mail-order retailers would be unduly burdened by having to comply with fifty states worth of sales tax schemes. *See Wayfair*, 138 S. Ct. at 2093. A major concern was compliance costs, which must include some cost associated with inevitable errors in administering the tax. *See id.* Presumably out-of-state retailers would commit more errors—errors that cost them money—than in-state retailers. This is essentially what the Kanslers complain, that our statute of limitations exposes people who engage in interstate

13

commerce to a greater risk of suffering for tax mistakes. But instead of holding that any degree of de facto discrimination against interstate commerce invalidated the tax (like the Kanslers ask us to do), the United States Supreme Court employed a balancing test. It observed first that "interstate commerce may be required to pay its fair share of state taxes." *Wayfair*, 138 S. Ct. at 2091 (quoting *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 31, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988)). The relevant question was whether the challenged law created an *undue* burden on interstate commerce. *See Wayfair*, 138 S. Ct. at 2091 (emphasis added). This is similar to, if not essentially the same as, the *Pike* balancing test. *See id.*; *see also Pike v. Bruce Church Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970).

¶23.    The second *Complete Auto* prong is apportionment, which requires considering the internal consistency of the statute, although the internal consistency test has also sometimes been said to apply to the final *Complete Auto* prong, discrimination, as well.[7]

¶24.    As this Court recently explained in *AT & T*,

> "Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear." [*Okla. Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 185, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995)]. The test "simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with intrastate commerce." *Id.* "A failure of internal consistency shows as a matter of law that a State is

---

[7] *See Armco Inc. v. Hardesty*, 467 U.S. 638, 644, 104 S. Ct. 2620, 81 L. Ed. 2d 540 (1984). External consistency is also potentially an issue under the apportionment prong, but it is not contested by the Kanslers. "External consistency looks . . . to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." *AT & T*, 202 So. 3d at 1219 (quoting *Okla. Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 185, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995)).

14

attempting to take more than its fair share of taxes from the interstate transaction, since allowing such tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." *Id.*

*AT & T*, 202 So. 3d at 1219. The internal consistency test

allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States, and (2) tax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes.

*Id.* (quoting *Maryland v. Wynne*, 135 S. Ct. 1787, 1802, 191 L. Ed. 2d 813 (2015)).

¶25. The Kanslers contend that our statute fails the internal consistency test because taxpayers with income from other states will suffer more from our statute of limitations than taxpayers whose income is derived solely from Mississippi. The Kanslers apparently prefer the internal consistency test because, unlike the other *Complete Auto* prongs or the traditional discrimination/balancing test, it makes no allowance for balancing the state's interest against the impact on interstate commerce.

¶26. The problem with this argument is that the internal consistency test employs a hard-line rule rather than a balancing test because of the limited question it is supposed to address—whether double taxation results from the intrinsic unfairness of a state's tax structure (generally disallowed) or the interaction with other states' tax structures (allowed). The reviewing court is supposed to "look[] to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage." *Jefferson Lines*, 514 U.S. at 185. The test is theoretical; it "asks nothing

about the degree of economic reality reflected by the tax." *Id.*

¶27. The Kanslers have cited no instance where a Court found a tax scheme failed the internal consistency test because of practical or collateral issues like a statute of limitations, nor are we aware of any. As noted above and below, compliance difficulties have been addressed under other *Complete Auto* prongs. If the internal consistency test were to be applied as the Kanslers argue, no tax on interstate commerce—which is necessarily more complicated than purely intrastate taxes and thus inevitably subject to more errors and associated costs—could survive the test.

### D. The Discrimination/Balancing Test

¶28. The remaining *Complete Auto* prong is that the tax does not discriminate against interstate commerce. The United States Supreme Court has also articulated this question as the preliminary step in a traditional, non-*Complete Auto*-specific dormant Commerce Clause analysis. *See Bendix Autolite Corp. v. Midwesco Enterprises Inc.*, 486 U.S. 888, 891, 108 S. Ct. 2218, 100 L. Ed. 2d 896 (1988). In *Bendix*, the Supreme Court addressed a challenge to an Ohio statute that tolled the limitations period when a defendant was out of state. *See id.* at 899. For foreign corporations, the effect of this statute was to require the defendant to "appoint an agent for service of process, which operates as consent to the general jurisdiction of the Ohio courts." *Id.* The Supreme Court held that it "may" have found the statute facially discriminatory against interstate commerce, but it would proceed to the *Pike* balancing test "to demonstrate that its legitimate sphere of regulation is not much advanced by the statute while interstate commerce is subject to substantial restraints." *Id.* at 891. The

Court observed that "statute of limitations defenses are not a fundamental right," but they are "an integral part of the legal system," and a state "may not withdraw such defenses on conditions repugnant to the Commerce Clause." *Id.* at 893 (citations omitted). "The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain." *Id.* The state could not justify the rule because the defendant in that case was subject to service of process under Ohio's long-arm statute, and, thus, the tolling provision failed under the *Pike* balancing test. *See id.* at 894. *Bendix* is not on all fours with today's case because the challenged statute there categorically affected out-of-state businesses, but it is instructive as to applying the discrimination/balancing test approach to a challenge to a statute of limitations.

¶29. If we apply the discrimination/balancing test, the first step is to ask whether the law at issue discriminates against interstate commerce; such laws "face a virtually per se rule of invalidity." *Granholm v. Heald*, 544 U.S. 460, 476, 125 S. Ct. 1885, 161 L. Ed. 2d 796 (2005). Discriminatory in this context is usually equated to "economic protectionism" favoring in-state interests. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270, 104 S. Ct. 3049, 82 L. Ed. 2d 200 (1984). If the state law does not discriminate against interstate commerce, if it instead "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970).

17

¶30.   Crucially, the Kanslers bear the burden of proof to show both that the statute discriminates against interstate commerce and, if it does not, to show that the burden imposed on commerce is clearly excessive in relation to the putative local benefits.  *See **Hughes v. Oklahoma***, 441 U.S. 322, 336, 99 S. Ct. 1727, 1736, 60 L. Ed. 2d 250 (1979) (challengers bear burden of proving discrimination against interstate commerce); ***Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown***, 567 F.3d 521, 528 (9th Cir. 2009) (challengers bear burden of proving clearly excessive burden on interstate commerce).

¶31.   Our statute of limitations for tax returns is not discriminatory on its face.  The statute and its various tolling provisions make no distinction between in-state and out-of-state taxpayers or between interstate and intrastate commerce.  *See* Miss. Code Ann. § 27-7-49 (Supp. 2008); Miss. Code Ann. § 27-7-313 (Rev. 2017).

¶32.   The statute of limitations might also be found to be discriminatory if it had a discriminatory / protectionist purpose or effect.  *See **Bacchus Imports***, 468 U.S. at 270.  As to a discriminatory or protectionist purpose (this would usually be of the legislature in passing the law), the Kanslers have produced no evidence on that point, and since they bear the burden of proof, the analysis ends there.  For a discriminatory or protectionist effect, the Kanslers rely on the internal consistency test, which, as we have already explained above, they misapply.

¶33.   Since our statute of limitations is not obviously discriminatory against interstate commerce, we turn to the ***Pike*** balancing test; we ask whether the statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate

18

commerce are only incidental." *Pike*, 397 U.S. at 142. If so, "it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* This is the test Justice Scalia compared to trying to decide "whether a particular line is longer than a particular rock is heavy." *See Bendix*, 486 U.S. at 897 (Scalia, J., concurring).

¶34. As discussed above, our statute of limitations does not discriminate against interstate commerce on its face. The Kanslers' assertion that it burdens interstate commerce, to an extent, has some merit. We acknowledge that it may be difficult for a taxpayer to determine how to apportion his income when it is arguably earned in multiple states. But it is inevitable that it will be more difficult to comply with taxes on interstate commerce. And it has not been developed in the record how severe or pervasive this particular issue is, nor is there any real evidence in the record regarding the countervailing interests of finality and ease of administration that are advanced by the Department of Revenue. Thus, this issue comes down to the burden of proof, which is on the Kanslers. *See Brown*, 567 F.3d at 528. They have failed to show that our statute of limitations' burden on interstate commerce is "clearly excessive in relation to the putative local benefits." *See Pike*, 397 U.S. at 142.

¶35. It is also worth noting *Nissan Motor Corp. v. Commissioner of Revenue*, 552 N.E.2d 84, 88-89 (Mass. 1990), the only case of which we are aware that addressed a constitutional challenge similar to the one made here. The Massachusetts Supreme Court denied the challenge, holding,

> If the corporate excise tax formula . . . is constitutionally valid under the commerce clause, as Nissan does not dispute, then the mere fact that an error

19

may occur in the Commonwealth's computation of it, and that the taxpayer then has the time set out in [the statute] to seek an abatement does not render the scheme unconstitutional. The purpose of the commerce clause is to protect interstate commerce from discrimination or regulation by the States or from action, such as a tax, which imposes a direct and immediate burden on such commerce. *Commissioner of Corps. & Taxation v. Ford Motor Co.*, [33 N.E.2d 318 (Mass. 1941)]. Both the . . . tax itself and the abatement remedy apply to domestic and foreign corporations engaged in interstate commerce alike. Nissan's assertion that local businesses do not face the "risk" interstate businesses do, of paying tax twice to two different States by the Commonwealth's erroneous application of [the tax], ignores the fact that a taxpayer like Nissan is charged with knowledge of the tax laws wherever it does business, *see Atkins v. Parker*, 472 U.S. 115, 130, 105 S. Ct. 2520, 2530, 86 L. Ed. 2d 81 (1985); *Wilkinson v. New England Tel. & Tel. Co.*, 327 Mass. 132, 97 N.E.2d 413 (1951), and has several years, under [the statute of limitations] to seek the remedy of abatement if a tax is incorrectly assessed. Local businesses, too, are in peril of erroneous tax assessment, and are limited to the [same] deadlines, which Nissan has not challenged as unreasonable.

The fact that Nissan stands today in the unfortunate position of having paid tax on the same income twice to two different States is not the fault of either Massachusetts or New York. Engaging in "interstate commerce" is no talisman freeing Nissan from meeting reasonable deadlines set by the Legislature for bringing a complaint against assessment of a corporate excise tax in Massachusetts. *George S. Carrington Co. v. State Tax Comm'n*, [377 N.E.2d 950 (Mass. 1978)]. The commerce clause does not grant immunity to foreign corporations from such State taxation that does not directly oppress interstate commerce. *Commissioner of Corps. & Taxation v. Ford Motor Co.*, *supra* 308 Mass. at 570, 33 N.E.2d 318.

*Nissan Motor Corp.*, 552 N.E.2d at 88-89. The Massachusetts court further noted the value

of statutes of limitation for taxes,

It should be noted that in the tax context, statutory time limits have special significance. A tax system without a final point at which accounts are declared settled—under which both taxpayer and government stand forever on guard, receipts and other facts proving valuation and conduct of business, forever at the ready—"would be all but intolerable, at least Congress has regarded it as ill-advised," the United States Supreme Court has observed. *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 301, 67 S. Ct. 271, 273, 91 L. Ed. 296 (1946). "[A] statute of limitation is an almost indispensable element of

20

fairness as well as of practical administration of an income tax policy." ***Id.***

***Nissan Motor Corp.***, 552 N.E.2d at 89. The court concluded by noting that "it is not the task of the courts to 'adjust' the time limits of tax statutes where their application would appear unjust or inequitable" because "[s]tatutes of limitation are by definition arbitrary and their operation does not discriminate between the just and the unjust claim." ***Id.*** at 89-90 (citations omitted).

¶36.    Finally, we echo the Utah Supreme Court's caution against novel Commerce Clause arguments. That court explained,

> Many decades ago the Supreme Court described its dormant Commerce Clause caselaw as a "quagmire." ***Nw. States Portland Cement Co. v. Minnesota***, 358 U.S. 450, 458, 79 S. Ct. 357, 3 L. Ed. 2d 421 (1959). Not much has changed in the interim, except perhaps to add more "room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation." ***Id.*** at 457, 79 S. Ct. 357. Yet we must of course decide the cases that come before us, mindful of our role as a lower court to follow controlling precedent from the U.S. Supreme Court.
>
> In so doing, we are reluctant to extend dormant Commerce Clause precedent in new directions not yet endorsed by that court. The high court's precedents in this area seem rooted more in "case-by-case analysis" than in any clear, overarching theory. *See **W. Lynn Creamery, Inc. v. Healy***, 512 U.S. 186, 201, 114 S. Ct. 2205, 129 L. Ed. 2d 157 (1994). In a field like this one, it is more difficult than usual for a lower court to anticipate expansions of the law into new territory, as any decision to do so seems more like common-law decision-making than constitutional interpretation. The principle of dormant commerce, after all, is not rooted in a clause, but in a negative implication of one; so there is a dearth of any textual or historical foundation for a court to look to.
>
> Our hesitance to extend the law of dormant commerce is reinforced by a practical problem: The extension advocated [here] would open a can of worms.

***DIRECTV v. Utah State Tax Comm'n***, 364 P.3d 1036, 1049 (Utah 2015).

### E. Conclusion

¶37.    In summary, we reject the Kanslers' novel attempt to apply the internal consistency test to a statute of limitations.  Instead, we analyze the challenge under the traditional discrimination/*Pike* balancing test, and we find that the discrimination alleged by the Kanslers is "incidental" to Mississippi's otherwise nondiscriminatory statute of limitations. It therefore must "be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike*, 397 U.S. at 142.  We cannot say that is the case based on the record before us.

## II.    Due Process

¶38.    Finally, the Kanslers contend the three-year limitations period for filing amended returns violates their due process rights.  This second issue receives only cursory treatment in their brief; all told, it cites a single case and occupies less than a single full page of argument.  The Kanslers cite *Marx v. Broom*, 632 So. 2d 1315, 1320 (Miss. 1994), where this Court held that a statute which "stripp[ed] . . . federal retirees of the right to file for a refund [for an illegally collected tax] . . . without providing them any means of protecting those rights . . .  violated [their] Fourteenth Amendment right to due process."

¶39.    *Marx* is inapposite, first, because the tax here was not illegally collected by the State; it was voluntarily paid by the Kanslers.  Nor does the statute of limitations here categorically deny the Kanslers' eligibility for the tax credit; they could have asked for it in their original tax return, and after that they had three years to amend their returns.  It may not have been as long as the Kanslers would have liked, but the statute of limitations did not violate their

22

right to due process under *Marx*.

¶40.    It is presumed that the trial court's judgment is correct, and the Kanslers, as the appellants, are required to show otherwise.  *See **Barrhead v. State***, 57 So. 3d 1223, 1231 (Miss. 2011).  This Court is under no obligation to consider this issue beyond the arguments presented, and we decline to do so.

## CONCLUSION

¶41.    We affirm the chancery court's grant of summary judgment to the Mississippi Department of Revenue.

¶42.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**